IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JUSTIN COWGER,<br><br>               Plaintiff,<br><br>vs.<br><br>SIGNAL PEAK ENERGY, a Montana<br>Corporation,<br><br>               Defendant. | CV  21-99-BLG-SPW-TJC<br><br><br>**FINDINGS AND<br>RECOMMENDATIONS OF<br>U.S. MAGISTRATE JUDGE** |

This action was originally brought by Plaintiff Justin Cowger ("Cowger") in the Montana Fourteenth Judicial District Court, Musselshell County (DV-21-17) on March 19, 2021, against Signal Peak Energy ("SPE") for wrongful termination. (Doc. 7.)  On March 26, 2021, Cowger filed a First Amended Complaint in Musselshell County.  (Doc. 8.)  SPE timely removed the action to this Court, invoking diversity jurisdiction under 28 U.S.C. § 1332(a).  (Doc. 1.)

Presently before the Court is SPE's Motion for Summary Judgment.  (Doc. 26.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 27, 33, 37.)  For the following reasons, the Court recommends that SPE's motion be **GRANTED in part and DENIED in part**.

/ / /

/ / /

1

## I.    Background[1]

SPE operates an underground coal mine near Roundup, Montana.  SPE is regulated by the Mine Safety Health Administration ("MSHA").  Accordingly, it is required by federal regulation to report all workplace injuries to MSHA.

Cowger began working for SPE on October 8, 2010, as a shift forearm and was eventually promoted to longwall coordinator.  During his employment, Cowger reported to Dale Musgrave ("Musgrave"), the Vice President of Underground Operations.  His employment continued until he was terminated on March 27, 2020.

On September 16, 2019, Cowger and Dave Brown ("Brown"), a fellow employee, went underground to take measurements on a longwall face.  Cowger was injured when coal suddenly fell off the longwall, completely burying him. Cowger testified that he could not move and had a difficult time breathing.  (Doc. 34-1 at 130:23-24, 131:2-3.)  After he was extracted, Cowger was unable to bear weight on his right leg and other crewmembers had to help him walk.  Cowger recounts being in shock and in "extreme pain."  (*Id.* at 146:1-3.)  Cowger also remembers hearing Brown "instruct[] people while I was still buried not to tell anybody . . . not to say a single word about this to anybody."  (*Id.* at 133:19-22.)

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motion for summary judgment, are taken from the parties' submissions, and are undisputed except where indicated.

Cowger testified that Brown drove him out of the mine and to the back of the bathhouse so that nobody would see him.  (*Id.* at 135:12-13.)  Cowger states he was in too much pain to take his boot off and had to cut it off with a razor.  (*Id.* at 135:20-23.)  Brown then drove Cowger home.

On the way home, Brown asked Cowger if he wanted to go to the hospital. Cowger replied that he may, but first, he needed to call Musgrave to find out "what [Musgrave] want[ed] [him] to do."  (*Id.* at 136:17-20.)  Once home, Cowger called Musgrave and told him what happened.  Musgrave told Cowger that "this was a really bad time for this to happen."  (*Id.* at 137:8-10.)  Cowger understood it was a bad time because "management and the mine [were] under investigation by the FBI and the EPA."  (Doc. 34 at ¶ 49.)  Therefore, Cowger volunteered to say the accident occurred at home on a four-wheeler, and Musgrave agreed "that would be good."  (Doc. 34-1 at 137:19-22.)  After ending the call, Cowger went immediately to the hospital and discovered his right leg was broken in four places.  On September 19, Cowger had surgery that required a metal plate and seven pins.  All together he missed work on September 17, 18, 19, and 20, 2019, because of his injury.

Cowger returned to work on September 23, 2019.  By that time, MSHA had received an anonymous report about Cowger's injury and opened an investigation. Curtis Floyd ("Floyd"), SPE's safety director, told Cowger that MSHA was asking

for information regarding his injury.  When Cowger told Musgrave that MSHA was investigating the accident, Musgrave responded that he "[could not] be a part of this" and that Cowger needed to tell Joe Farinelli ("Farinelli"), SPE's Interim CEO, that Cowger had falsely reported the cause of his accident to his doctors. (*Id.* at 175:17-176:1.)  At this time, nothing had been reported or misreported to MSHA regarding Cowger's accident.  (*Id.* at 176:2-4; 181:1-4.)

Cowger explained what happened to Farinelli, but believed he already knew about the accident because he did not ask him any questions.  (*Id.* at 180:10-16.) The same day, Cowger filled out a "Company Incident Report" (*see* Doc. 28-13), but stated he felt "influenced to downplay" his injury.  (Doc. 34-1 at 189:15.)  In the following weeks, Cowger met with MSHA inspectors regarding his accident, but maintains he continued to feel compelled to downplay his injuries.

Next, according to SPE, Musgrave told Cowger that he was going to tell Floyd to report to MSHA that Cowger missed work from September 17-20 because he was on vacation, and not as lost time due to the accident.  It is undisputed, however, that Cowger did not have previously scheduled vacation days from September 17-20.  (Doc. 34 at ¶ 75.)  Cowger also maintains that, at this point, Musgrave, Floyd, and Farinelli, and everyone else at the mine, knew that he had missed work due to his injuries and not vacation.  (*Id.* at ¶ 73.)  Other than this

communication from Musgrave, Cowger denies that he had any knowledge of, or involvement in, how his lost days were reported to MSHA. (*Id.* at ¶¶ 72-73, 76.)

Musgrave was later arrested and charged with possession and distribution of cocaine. Musgrave was terminated on December 19, 2019. On February 13, 2020, SPE hired Parker Phipps as the new Vice President of Underground Operations. After hearing rumors about Cowger's injury, Phipps asked Phil Stansell ("Stansell"), the Human Resources Director, and Floyd to investigate Cowger's accident and his missed days following the accident. Based on the investigation, SPE concluded that Cowger did not have prescheduled vacation days from September 17-20, 2019, and that SPE misreported to MSHA that Cowger's injury did not cause him to miss workdays. On March 25, 2020, Floyd amended SPE's report to MSHA to correctly state that Cowger's injury caused him to miss four days of work.

Cowger was terminated on March 27, 2020. According to SPE, Phipps and Stansell decided to terminate Cowger for violation of SPE's "policies and procedures when he lied about having prescheduled vacation following his September 16, 2019 injury." (Doc. 28 at ¶ 124.) Cowger, on the other hand, testified that he was told he was being discharged for failing to properly report his accident. (Doc. 34-1 at 73:17-19.)

On March 19, 2021, Cowger filed this lawsuit in Montana state court.  (Doc. 7.)  Thereafter, SPE removed the action to this Court.  (Doc. 1.)  Cowger's First Amended Complaint alleges a single claim for wrongful discharge (Count I) and seeks punitive damages.  (Doc. 8.)  SPE now moves for summary judgment on Cowger's claim for wrongful discharge.  (Doc. 26.)

## II.    Legal Standard

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable factfinder to return a verdict for the nonmoving party.  *Id*.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  "When the moving party would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *C.A.R. Trans. Brokerage Co. v. Darden Rests., Inc.*,

213 F.3d 474, 480 (9th Cir. 2000).  If the moving party fails to meet its initial

burden, "summary judgment must be denied even if no opposing evidentiary

matter is presented."  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)

(internal quotations omitted).  If the moving party meets its initial responsibility,

the burden then shifts to the opposing party to establish that a genuine issue as to

any material fact actually exists.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986).

 In attempting to establish the existence of this factual dispute, the opposing

party must "go beyond the pleadings and . . . by 'the depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there

is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P.

56(e)).  The opposing party cannot defeat summary judgment merely by

demonstrating "that there is some metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216,

1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of

the non-moving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at

252).

 When making this determination, the Court must view all inferences drawn

from the underlying facts in the light most favorable to the non-moving party.  *See

Matsushita*, 475 U.S. at 587.  "Credibility determinations, the weighing of

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## III. Discussion

### A. Wrongful Discharge

Cowger brings this action under Montana's Wrongful Discharge from Employment Act ("WDEA"). The WDEA provides the exclusive remedy for wrongful discharge from employment under Montana law, and provides a discharge is wrongful only if:

> (1) (a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;
>
> (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
>
> (c) the employer materially violated an express provision of its own written personnel policy prior to the discharge, and the violation deprived the employee of a fair and reasonable opportunity to remain in a position of employment with the employer.

Montana Code Annotated § 39-2-904 (2021).

Cowger asserts claims against SPE under all three subsections. Cowger also asserts a claim for punitive damages under Mont. Code Ann. § 39-2-905(3).[2] That section permits the recovery of punitive damages under the WDEA "if it is

---

[2] Prior to 2021, a claim for punitive damages under the WDEA was found at § 39-2-905(2). *See* Mont. Code Ann. § 39-2-905(2) (2019).

established by clear and convincing evidence that the employer engaged in actual

fraud or actual malice in the discharge of the employee in violation of 39-2-

904(1)(a)."

The Court will address each claim in turn.

### 1. Retaliation for refusal to violate public policy or for reporting a violation of public policy and punitive damages

SPE first moves for summary judgment on Cowger's claim under subsection

(a), arguing Cowger has failed to establish that his termination was in retaliation

for his refusal to violate public policy or for reporting a violation of public policy.

The Court agrees.

Under the WDEA, public policy is defined as "a policy in effect at the time

of the discharge concerning the public health, safety, or welfare established by

constitutional provision, statute, or administrative rule." Mont. Code Ann. § 39-2-

903(8). To overcome a motion for summary judgment, a plaintiff must present

evidence raising a genuine issue of material fact as to whether his discharge was in

retaliation for his refusal to violate public policy or for reporting a violation of

public policy. Mont. Code Ann. § 39-2-904(1)(a).

In opposing summary judgment here, Cowger points to 30 C.F.R. pt. 50,

which requires mine operators to investigate and immediately notify MSHA of

accidents. Cowger alleges that SPE "violated public policy by failing to timely

notify MSHA of Cowger's accident" and "continued to violate public policy by

misreporting Cowger's lost time as vacation days." (Doc. 33 at 14.) Thus, the

gravamen of Cowger's argument is that *SPE* violated public policy by failing to

accurately or timely report his injury. But this argument, even if true, fails to give

rise to a claim under § 39-2-904(1)(a). Subsection (a) provides a claim where an

employee refuses to violate, or reports a violation of, public policy; it does not

provide a claim where an employer allegedly violates public policy in discharging

an employee. *Henrichs v. Safeway, Inc.*, 2014 WL 6610046, at *4 (D. Mont. Nov.

20, 2014) ("The statute . . . provides a claim if an employee is discharged for

*reporting* a violation of public policy, but says nothing about providing a claim

where, as here, an employer allegedly discharges an employee *in violation of*

public policy.") (Emphasis in original).

Cowger also argues he "reported to [SPE] that it had violated public policy"

by "attempt[ing] to cover up his workplace injuries" and "misreport[ing] his lost

time." (Doc. 33 at 15.) In support of the alleged report regarding his injuries,

Cowger points to his testimony that he was instructed to report the truth regarding

his injury to CEO Farinelli. He, therefore, told Farinelli that he "had an accident

on the longwall and that [he] had turned it in as a four-wheeler accident and that

MSHA was investigating." (Doc. 34-1 at 180:2-5.) But this testimony fails to

demonstrate that Cowger reported a violation of public policy by anyone, other

than possibly himself, and he makes no argument that he was discharged in

10

retaliation for making this disclosure to Farinelli.  In fact, Cowger believed Farinelli already knew about his work-related accident prior to their conversation. (*Id*. at 180:10-16.)

With respect to the alleged report that Signal Peak had misreported his lost time, Cowger provides no evidence that he made such a report, to whom the report was allegedly made, or that he was discharged in retaliation for doing so.  Indeed, Cowger concedes he simply complied with SPE's instruction regarding his lost time.  (Doc. 34 at ¶¶ 118, 119.)  He acknowledges he "was instructed by his employer, [SPE], how to handle his workplace injury, including his time off of work.  He did as he was instructed."  (*Id*. at ¶ 119.)

Without some evidence that he reported a violation of public policy, and that his discharge was in retaliation for such report, Cowger's claim under subsection (a) fails. *Henrichs*, 2014 WL 6610046, at *4 ("Unless an employee is discharged 'for reporting a violation of public policy,' there can be no claim under this particular statutory provision.").  Summary judgment is, therefore, appropriate.

Additionally, to recover punitive damages under the WDEA, an employee must establish actual fraud or actual malice in the discharge of the employee in violation of 39-2-904(1)(a).  Mont. Code Ann. § 39-2-905(3).  Because the Court recommends that summary judgment be granted as to Cowger's claim under subsection (a), summary judgment should likewise be granted as to his claim for

punitive damages. *Cartwright v. Scheels All Sports, Inc.*, 310 P.3d 1080, 1086 (Mont. 2013) (summary judgment on a violation of public policy claim under § 39-2-904(1)(a) forecloses the possibility of recovering punitive damages under § 39-2-905(3)).

Accordingly, summary judgment should be granted as to Cowger's claim under Mont. Code Ann. § 39-2-904(1)(a), and his claim for punitive damages under Mont. Code Ann. § 39-2-905(3).

### 2. Written Personnel Policy

The Court also finds that summary judgment should be granted as to Cowger's claim under Mont. Code Ann. § 39-2-904(1)(c), because Cowger has failed to show that his discharge violated an express provision of SPE's written personnel policies.

Cowger first contends that SPE violated its policy and procedures for progressive discipline when it terminated him. While Cowger argues that his termination was "treated differently than others," he does not point to an express, written SPE policy that provides for progressive discipline. (*See* Doc. 34 at ¶ 15.) This argument, therefore, fails to meet the plain language of the statute.

Second, Cowger alleges SPE violated its express policy on reporting accidents and injuries. SPE's "Reporting of Accidents or Injuries" provides that "[a]ll incidents and accidents will be investigated, and employees involved,

12

including witnesses, are obligated to participate fully in the investigate process."

(Doc. 28-6 at 73.)  In support of his argument that SPE violated this policy,

Cowger maintains that "[SPE] did not conduct any sort of investigation into [his]

workplace accident."  (Doc. 33 at 12.)  It is undisputed, however, that Phipps asked

Stansell and Floyd to investigate Cowger's accident.  In response, they interviewed

eight employees, interviewed Cowger, and reviewed Cowger's prescheduled

vacation for the week of September 16, 2019.  (Doc. 34 at ¶¶ 109-11, 119.)

Although Cowger is critical, perhaps justifiably, of the sincerity of SPE's

investigation, he cannot show that SPE did not investigate his accident.  He also

does not explain how the lack of investigation deprived him of a fair and

reasonable opportunity to remain in his position of employment with SPE, as

required by § 39-2-904(1)(c).

Finally, Cowger claims SPE violated its Discipline Policy, which lists

potential grounds for discipline.  (Doc. 28-7 at 42-43.)  Cowger argues that the

only acts alleged by SPE as a basis for termination are Cowger's failure to report

his accident, and misrepresenting that he missed 4 days of work for vacation.

Cowger argues that if there are questions of fact as to whether he committed these

acts, then there are questions of fact as to whether SPE violated the provisions of

its Disciplinary Policy.  Again, however, Cowger does not point to any express

provision of the Discipline Policy SPE allegedly violated.  He simply refers

13

generally to the policy and argues there are questions of fact.  This is not sufficient to create a genuine issue of material fact.

Moreover, to the extent Cowger argues SPE violated its Discipline Policy because he was not terminated for any of the reasons listed, the enumerated grounds for discipline are expressly non-exclusive.  The policy states: "**NOTE: THIS LIST IS NOT ALL INCLUSIVE**."  (*Id*. at 42) (emphasis in original).  The policy further provides that "[d]iscipline is at the discretion of the Company and shall be decided on a case-by-case basis."  (*Id*.)  Therefore, discharging an employee for reasons other than those specifically listed does not violate an express provision of SPE's written Discipline Policy.

Accordingly, Cowger cannot show that SPE violated an express provision of its own written personnel policy in terminating his employment, and thus, summary judgment should be granted as to his claim under subsection (c).

### 3.    Good Cause

Under section 39-2-904(1)(b), a discharge is wrongful if it was "not for good cause."  The WDEA defines "good cause" as "reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption of the employer's operation, or other legitimate business reason."  Mont. Code Ann. § 39-2-903(5).  "A legitimate business reason is one that is not false, whimsical, arbitrary or capricious, and . . . must have some logical relationship to the needs of

14

the business." *Putnam v. Cent. Mont. Med. Ctr.*, 460 P.3d 419, 423 (Mont. 2020)

(citing *Bird v. Cascade Cty.*, 386 P.3d 602, 605 (Mont. 2015) (internal citations

omitted)).

     In determining whether a discharge is wrongful, courts must balance an

employer's right to exercise discretion over whom it employs with the employee's

equal right to secure employment. *Johnson v. Costco Wholesale*, 152 P.3d 727,

733 (Mont. 2007) (internal citation omitted). This balance "should favor an

employee who presents evidence, and not mere speculation or denial, upon which a

jury could determine that the reasons given for his termination were false, arbitrary

or capricious, and unrelated to the needs of the business." *Id.* But employers are

afforded the greatest discretion when dealing with a managerial employee.

*Sullivan v. Cont'l Constr. of Mont., LLC*, 299 P.3d 832, 835 (Mont. 2013).

     An employer must set forth evidence demonstrating good cause for the

discharge, whereupon the burden shifts to the employee. *Putnam*, 460 P.3d at 424.

"To defeat a motion for summary judgment on the issue of good cause, the

employee may either prove that the given reason for the discharge is not good

cause in and of itself, or that the given reason is a pretext and not the honest reason

for the discharge." *Becker v. Rosebud Operating Servs., Inc.*, 191 P.3d 435, 441

(Mont. 2008) (internal quotations omitted). "All reasonable inferences which can

be drawn from the evidence presented must be drawn in favor of the non-moving

party." *Vettel-Becker v. Deaconess Med. Ctr. of Billings, Inc.*, 177 P.3d 1034, 1039 (Mont. 2008).

Here, SPE argues it had good cause to terminate Cowger because the undisputed facts show that his conduct violated SPE's policies, MSHA regulations, and his obligations as a manager to ensure compliance with SPE's policies and procedures.  (Doc. 27 at 24.)[3]  Cowger, on the other hand, argues there are genuine issues of material fact regarding good cause.

First, Cowger argues that disputed facts exist as to the basis for his termination.  Cowger maintains that at the time of his termination, he was told he was being terminated for failing to properly report his accident.  (Doc. 34 at ¶ 124.) Cowger understood this to mean that he had failed to report his work-related injury in a timely manner.  Cowger argues SPE has now retooled its position for purposes of this litigation, and claims he was terminated for misrepresenting his vacation days.  (Doc. 33 at 9-10.)

---

[3] The parties appear to dispute whether Cowger's position, as a longwall coordinator, was a management position.  (*See* Doc. 34-1 at ¶ 8.)  As noted above, an employer has the broadest discretion over managerial employees.  *Bird*, 386 P.3d at 606 (citing *Moe v. Butte-Silver Bow Cty.*, 371 P.3d 415, 427 (Mont. 2016)). This discretion is not absolute, however, and summary judgment should be denied where there are questions of fact as to whether an employer had good cause for termination.  *Moe*, 371 P.3d at 428.  Because the Court finds there are questions of fact as to the basis of Cowger's termination, and whether SPE had good cause to terminate Cowger, whether Cowger's position was managerial, and thus whether SPE was entitled to greater discretion in his discharge, need not be determined at this time.

Cowger is correct that SPE has disavowed any claim that Cowger was fired for not properly reporting his work-related injury, and argues that Cowger only speculates that "failure to properly report his accident" meant misreporting the cause of the accident.  (Doc. 37 at 10.)  SPE maintains, instead, that it had good cause to terminate Cowger because he "misrepresented that he had prescheduled vacation for the days immediately following his September 16, 2019 workplace injury" and "[t]his lie caused SPE to misreport to MSHA that Cowger's injury did not result in him missing any work-days."[4]  (Doc. 27 at 24.)

The parties' positions on this issue, and the evidence submitted in support of their respective positions, present an issue of fact as to the reason for Cowger's termination.  Cowger testified that he met with Phipps on March 27, 2020, and was told: "You're being terminated for failure to properly report your accident."  (Doc. 34-1 at 73:17-19.)  When he attempted to talk to Phipps, he was told "[t]his is not a discussion," and was ordered get his things and leave as quickly as possible.  (*Id.* at 73:20-23.)  Cowger's testimony draws some support from SPE's "Employee Exit HR Check List," signed three days after Cowger's termination, which states: "Discharge – violation of company rules, regs, standards regarding reporting of

---

[4] SPE first reiterates this same reasoning for Cowger's termination in its Statement of Undisputed Facts, but then also states Cowger was informed he was terminated for failing to properly report his accident.  (Doc. 28 at ¶¶ 124, 126.)  The Court is far from convinced that these reasons are one and the same.

accident.  Not eligible for rehire." (Doc. 28-23.)

SPE does not appear to dispute Cowger's version of events.  (*See* Doc. 28 at ¶ 126.)  SPE maintains that Cowger simply assumed he was being terminated for failure to report his injury, but argues there is no proof to support this "conjecture." (Doc. 37 at 10.)  Nevertheless, SPE has not provided any contemporaneous evidence to support that misreporting vacation days was the basis for Cowger's termination, or to show that reason was ever communicated to Cowger, or anyone else, prior to the filing of this lawsuit.  SPE argues its position is supported by the fact that the investigation conducted in March 2020, prior to Cowger's discharge, focused on Cowger's vacation and lost workdays.  (*Id*.)  It is clear from the interview notes, however, that the investigation covered Cowger's accident, the reporting of the accident, as well as Cowger's missed days.  (*See* Docs. 28-19; 28-21.)

This evidence creates a disputed issue of fact as to the reason for Cowger's termination.  The issue of fact is also material.  The failure to report the initial accident and injury, and the misreporting of Cowger's vacation, are separate events.  The parties recognize this, and both treat them separately for purposes of this motion.  A jury may well find that one event provided good cause to discharge Cowger, while the other did not.  Thus, the issue may affect the outcome of the case and is for the jury to decide at trial, not the Court on summary judgment.

18

There are also disputed issues of material fact as to whether SPE's stated reason of misreporting vacation days provided good cause for Cowger's discharge. SPE argues that Cowger had an individual responsibility to accurately report his missed days, and that he lied about not missing scheduled workdays. In support, SPE points to evidence to support that Cowger knew his workdays had been misreported, and cites a number of general provisions requiring compliance with MSHA federal regulations and SPE company policies.

Cowger denies that he had any control over how his vacation days were reported. (*See* Doc. 34 at ¶¶ 72, 76, 77.) Cowger testified that Musgrave – his supervisor and superior in the company – told him he was going to have Floyd report Cowger's missed days as vacation time. (Doc. 34-1 at 213:17-19.) Cowger testified "[i]t was Musgrave's and safety's idea to make it look like [I was taking vacation days] as far as I know. I don't – I don't report this one way or another. They do." (*Id.* at 215:3-6.) (*See also id.* at 216:20 (Cowger stating he had "nothing to do with" how his missed days were reported); 219:25-220:3 ("Musgrave told me he would handle [reporting Cowger's vacation days] and went back and talked to [Floyd] shortly after he talked to me, and then [Floyd] reported it how [Musgrave] told him to report it.").) In short, Cowger argues that he did not misrepresent his vacation days. He contends he was informed by his boss how the company was going to report his vacation days, and then was fired for the actions

19

of his superiors in doing so.

Viewing the evidence in a light most favorable to Cowger, and drawing all justifiable inferences in his favor, a reasonable jury could find Cowger was not involved in reporting his missed days, and that SPE lacked good cause to discharge him on that basis.  Summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Accordingly, whether SPE had good cause to terminate Cowger for the reasons stated is an issue of fact for the jury, and summary judgment should be denied.

In sum, the Court finds that SPE's motion should be granted with respect to Cowger's claims under Mont. Code Ann. § 39-2-904(1)(a) and (c), that SPE discharged Cowger in retaliation for his refusal to violate public policy or for reporting a violation of public policy, and that SPE violated its own written personnel policy.  Summary judgment should also be granted as to Cowger's claim for punitive damages under Mont. Code Ann. § 39-2-905(3).

The Court finds, however, that there are questions of fact as to whether Cowger was terminated for good cause, and thus, summary judgment should be denied with respect to Cowger's claim under Mont. Code Ann. § 39-2-904(1)(b).

## IV.   Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that SPE's Motion for

Summary Judgment (Doc. 26) be **GRANTED in part and DENIED in part**.

**NOW, THEREFORE, IT IS FURTHER ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.  D. Mont. Local Rule 72.3.

**IT IS ORDERED**.

DATED this 27th day of July, 2023.

TIMOTHY J. CAVAN
United States Magistrate Judge