IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JUSTIN COWGER,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>SIGNAL PEAK ENERGY, a Montana Corporation,<br><br>　　　　　　Defendant. | CV 21-99-BLG-SPW<br><br>ORDER ADOPTING IN PART AND REJECTING IN PART FINDINGS AND RECOMMENDATIONS |

Before the Court are United States Magistrate Judge Timothy Cavan's Findings and Recommendations, filed July 27, 2023. (Doc. 38). Judge Cavan recommended the Court grant Signal Peak Energy's ("Signal Peak") Motion for Summary Judgment (Doc. 26) as to (1) whether Signal Peak discharged Cowger in retaliation for refusing to violate public policy under Montana Code § 39-2-904(1)(a), and (2) whether Signal Peak violated its own personnel policy prior to Cowger's discharge under Montana Code § 39-2-904(1)(c). (Doc. 38 at 12, 14). Judge Cavan recommended the Court deny Defendant Signal Peak's motion as to whether Signal Peak had good cause to discharge Cowger under Montana Code § 39-2-904(1)(b). (*Id.* at 20). Signal Peak timely objected to Judge Cavan's Findings and Recommendations as to Cowger's good cause claim (Doc. 41) and Cowger timely responded. (Doc. 42).

1

For the following reasons, the Court adopts in part and rejects in part Judge Cavan's Findings and Recommendations.

## I. Legal Standards

### A. Standard of Review

The parties are entitled to a de novo review of those findings to which they have "properly objected." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). The Court reviews for clear error the portions of the Findings and Recommendations to which the party did not specifically object. *See McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *McMillan v. United States*, 112 F.3d 1040, 1044 (9th Cir. 1997) (internal citation omitted).

A party makes proper objection if it "identif[ies] the parts of the magistrate's disposition that the party finds objectionable and present[s] legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Montana Shooting Sports Ass'n v. Holder*, No. CV 09-147-M, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010). "It is not sufficient for the objecting party to merely restate arguments made before the magistrate or to incorporate those arguments by reference." *Id.* The Court may

accept, reject, or modify, in whole or in part, those findings and recommendations to which a proper objection was made. 28 U.S.C. § 636(b)(1).

  B. *Summary Judgment Standard*

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). When making its determinations, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See id.* at 587.

## II. Facts

Neither party objects to Judge Cavan's recitation of the facts in the record, so the Court adopts them in full. The Court will briefly summarize the facts here.

Signal Peak operates an underground coal mine near Roundup Montana. Signal Peak hired Justin Cowger on October 8, 2010, as a shift forearm and later

promoted him to longwall coordinator.[1] On September 16, 2019, coal fell off the longwall and completely buried Cowger, breaking his leg in four places. During the incident, Cowger heard Dave Brown, the longwall planner, instructing other mine employees not to tell anybody about the accident. After coworkers extricated Cowger, Brown drove him out of the mine so nobody could see him.

Cowger knew he needed to see a doctor, but he first called Dale Musgrave, Vice President of Underground Operations for Signal Peak. Musgrave told Cowger that it was a "bad time for this to be happening." Cowger understood Musgrave to be referring to the current investigations of the mine by the FBI and EPA. After speaking to Musgrave, Cowger went immediately to the hospital, where he told providers that he had injured himself in an ATV accident. Cowger needed surgery to repair the damage, and on September 19, doctors inserted a metal plate and seven pins in Cowger's leg. Cowger missed work on September 16, 17, 18, 19, and 20.

By the time Cowger returned to work on September 23, 2019, the Mine Safety and Health Administration ("MSHA") had received an anonymous report about Cowger's injuries. Signal Peak Director of Safety, Curtis Floyd, informed Cowger that MSHA was asking about Cowger's location at the time of his injury. Floyd told Cowger that they should report the incident to MSHA. When Cowger told Musgrave

---

1. Longwall mining is a form of underground coal mining where a long wall of coal is mined in a single slice. (Doc. 34 ¶ 7, n.1.)

4

about Floyd's recommendation, Musgrave responded that Musgrave "could not be a part of this." Musgrave advised Cowger to inform Signal Peak's interim CEO, Joe Farinelli, that Cowger's accident had "happened at the mine and that [Cowger] had falsely reported it." Because MSHA was investigating the accident, Musgrave also recommended that "they needed to turn it in" to MSHA as a reportable injury. When Cowger told Farinelli about his accident, Farinelli did not ask Cowger any questions, leading Cowger to believe Farinelli already knew about the accident.

Cowger filled out an injury report, and Signal Peak reported the accident to MSHA. In the report, Cowger's lost workdays were reported as vacation time, even though Cowger was not previously scheduled to be on vacation. Cowger did not attempt to correct the inaccurate report and denies that he had any knowledge of or involvement in how his lost days were reported to MSHA. In the weeks following his accident, Cowger met with MSHA investigators, but downplayed the severity of his accident.

Signal Peak terminated Musgrave on December 19, 2019, after he was arrested and charged with possession and distribution of cocaine. On February 13, 2020, Signal Peak hired Parker Phipps as the new Vice President of Underground Operations. Signal Peak claims that Phipps initiated an investigation into Cowger's accident after hearing rumors about the handling of Cowger's injuries and wondering how an individual could not miss a day of work after such an injury.

5

Cowger asserts that there was not an official investigation; instead, Cowger claims that Phipps asked the HR director, Phillip Stansill, and Floyd, who was "integrally involved in misreporting Cowger's injuries to ... MSHA," to gather information. On March 25, 2020, Floyd amended Signal Peak's report of Cowger's injuries to MSHA to correctly state that Cowger's injury caused him to miss four days of work. Two days later, Signal Peak terminated Cowger. Signal Peak also discharged Brown for his conduct in response to Cowger's injuries and fired Floyd for failing to report another workplace injury.

Cowger sued Signal Peak in the 14th Judicial District Court of Montana in Musselshell County on March 19, 2021, for wrongful discharge under Montana's Discharge from Employment Act ("WDEA"). (Doc. 7). Signal Peak removed the case to this Court on September 17, 2021. (Doc. 1).

### III. Analysis

The WDEA provides the exclusive remedy for wrongful discharge from employment in Montana. Mont. Code Ann. § 39-2-902. A discharge is wrongful if it is: (1) in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy; (2) not for good cause after the employee's probationary period; or (3) the result of the employer violating its own written personnel policy. *Id.* § 39-2-904(1). An employer has good cause if it has "reasonable job-related grounds for an employee's dismissal based on a failure to

6

satisfactorily perform job duties; the employee's disruption of the employer's operation; the employee's material or repeated violation of an express provision of the employer's written policies; or other legitimate business reasons." *Id.* § 39-2-903(5).

Neither party objected to Judge Cavan's recommendation that this Court grant summary judgment in favor of Signal Peak as to its alleged retaliation under WDEA § 904(1)(a) and its alleged violation of personnel policies under WDEA § 904(1)(c). After reviewing the Findings and Recommendation, this Court finds Judge Cavan did not commit clear error in granting summary judgment in his Findings and Recommendations as to Cowger's WDEA §§ 904(1)(a) and 904(1)(c) claims. The Court adopts those findings in full.

Signal Peak filed proper objections to Judge Cavan's recommendation that summary judgment be denied as to Signal Peak's good cause argument. The Court will review those objections de novo.

   *A.   There is a Genuine Dispute of Material Fact Regarding the Basis for Cowger's Discharge*

Judge Cavan found a genuine issue of material fact existed as to why Signal Peak terminated Cowger: while Cowger argues that Signal Peak told him it was terminating him for his initial failure to report his accident, Signal Peak insists that it terminated Cowger for later misreporting his vacation days. (Doc. 38 at 17-18). Judge Cavan concluded that because a jury could find that one event provided Signal

7

Peak good cause to discharge Cowger and that the other did not, the reason as to why Signal Peak discharged Cowger was a question for the jury—not the Court—to decide.

Signal Peak objects to Judge Cavan's findings that disputed issues of material fact exist as to the basis of Cowger's discharge. (Doc. 41 at 18). It argues the undisputed facts both establish that Signal Peak discharged Cowger for his reporting of vacation days and provide good cause for Cowger's discharge. (*Id.* at 18, 26-27). Signal Peak then asserts that any disputed facts arise solely from Cowger's uncorroborated and self-serving testimony, which is insufficient to create a genuine issue of material fact. (*Id.* at 20). It finally argues that this case is like the Court's decision in *Brown v. Signal Peak Energy, LLC*, and should be treated accordingly. (Doc. 41 (citing *Brown*, No. CV 20-180-BLG, 2023 WL 3742358 (D. Mont. May 31, 2023))). Cowger responds that Signal Peak has improperly engaged in a shifting legal strategy by providing different post-hoc reasons for firing Cowger, and thus Judge Cavan did not err in finding a genuine issue of material fact exists as to whether Signal Peak had good cause to discharge Cowger. (Doc. 42 at 10-11). He further claims that Signal Peak errs in its reliance on *Brown* and that this case is factually distinct. (*Id.* at 15). The Court will consider each argument in turn.

When there is a genuine dispute of material fact about whether an employer's stated reason for discharging an employee is the true motivation for the discharge,

8

or when there exists a genuine dispute as to the reason for discharge, it is appropriate for the Court to deny the employer's motion for summary judgment. *See McCue v. Integra Imaging*, No. CV 19-147-M, 2021 WL 633416, at *3, *5 (D. Mont. Feb. 18, 2021); *see also Pedersen v. TJX Cos., Inc.*, 634 Fed. App'x. 186, 188 (9th. Cir. 2015). Under the WDEA, when a discharged employee demands and receives in writing a termination notice that provides the reasons for the employee's discharge, the parties arguments are limited to the reason(s) provided in the termination notice.[2] *Galbreath v. Golden Sunlight Mines, Inc.*, 890 P.2d 382, 385 (Mont. 1995) ("[T]he only reason for discharge the district court [can] consider [is] the reason set forth in the discharge letter."); *see also Smith v. Charter Commc'ns*, No. 21-35149, 2023 WL 4703251, at *2-*3 (9th Cir. Jul. 24, 2023) (Collins, J., concurring) (explaining that, while rooted in the Montana Rules of Evidence, the "*Galbreath* Rule" is a substantive of rule of Montana employment law and therefore binding on federal courts).

The Court agrees with Judge Cavan that disputed issues of material fact exist as to the basis of Cowger's discharge. Both parties have provided different plausible reasons for Signal Peak's termination of Cowger and have provided evidence

---

2. The *Galbreath* Rule limits the evidence a jury may hear at trial in a WDEA case. *Galbreath*, 890 P.2d at 385. In its review of a motion for summary judgment, the Court may only consider evidence that would be admissible at trial. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

supporting their positions: Cowger asserts that Signal Peak terminated him for his initial failure to report his accident; Signal Peak argues that it terminated him for later misreporting his vacation days. Signal Peak did not provide Cowger with a termination notice, though in its internal Employee Exit HR Checklist, Signal Peak reported that Cowger was discharged for "violat[ing] . . . company rules, regs, standards regarding reporting of accident."[3] (Doc. 28-23). Even though Signal Peak's position seems contrary to its internal documentation, a reasonable jury could believe Signal Peak discharged Cowger for either reason. Before deciding whether there is good cause for discharging an employee, the factfinder must know what that cause is, so it falls to the jury to decide both why Cowger was discharged and whether the discharge was for good cause.

Signal Peak argues that it has never changed its reason for discharging Cowger, but rather has simply "supplemented" its original reason by further explaining how Cowger failed to report his accident correctly. (Doc. 41 at 24). Signal Peak cites *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061-64 (9th Cir. 2002), a Hawai'i state employment discrimination and Title VII case where the Ninth Circuit allowed a party to supplement its original reasons for discharging the employee. (*Id.*) While *Villiarimo* is persuasive, Signal Peak does not cite, and the

---

3. Signal Peak did not provide Cowger with a copy of the Employee Exit HR Checklist when he was discharged. (Doc. 41 at 26 n.10).

Court cannot find, a WDEA case where a court has allowed this kind of "supplementing." Even if the Court applies Signal Peak's logic, it finds that Signal Peak did not supplement its original reason, but instead provided a new one. While both causes for termination stem from the same accident, Cowger allegedly lying to a hospital about the cause of a work-related injury is an event distinct from him allegedly misrepresenting to MSHA whether he had prescheduled vacation time.

Signal Peak also argues that Judge Cavan should not have considered Cowger's statements at all because they are only "denials and self-serving testimony." (No. 41 at 20). Cowger fails to respond to this argument.

The Montana Supreme Court has explained that, in WDEA cases, the balance between an employer's right to exercise discretion over employees and the employee's right to secure employment "should favor an employee who presents evidence, and not mere speculation or denial, upon which a jury could determine that the reasons given for his termination were false, arbitrary or capricious, and unrelated to the needs of the business." *Johnson v. Costco Wholesale*, 152 P.3d 727, 733 (Mont. 2007) (internal citation omitted). When a party only presents evidence that is so "uncorroborated and self-serving" that it fails to allege a genuine dispute of material fact, the party has not presented a disagreement sufficient to present to the jury. The Ninth Circuit has found an insufficient disagreement when (1) interrogatory answers were vague or conclusory, *Carter v. Clark County*, 459 Fed.

App'x 635, 636 (9th Cir. 2011); (2) testimony was contradicted by credible evidence in the record, *Untalan v. Stanley*, No. 22-55077, 2023 WL 2158371, at *1 (9th Cir. Feb. 22, 2023); or (3) a self-serving declaration had questionable relevance, *Barrett v. California ex rel. Dept. of Transp.*, 147 Fed. App'x 679, 680-81 (9th Cir. 2005). But a party's deposition testimony, even if uncorroborated and self-serving, sufficiently establishes a genuine dispute of material fact when the "testimony [is] based on personal knowledge, legally relevant, and internally consistent." *Nigro v. Sears, Roebuck and Co.*, 784 F.l3d 495, 498 (9th Cir. 2015). As the self-serving nature of a piece of evidence "bears [more] on its credibility [than its] cognizability for purposes of establishing a genuine issue of material fact," a district court should not disregard evidence at the summary judgment stage solely based on its self-serving nature. *S.E.C. v. Phan*, 500 F.3d 895, 909–10 (9th Cir. 2007).

In this case, Cowger's interrogatory answers and deposition testimony were based on personal knowledge, internally consistent, and relevant: Cowger's asserted basis for termination is based on his conversation with Phipps and Stansill, consistent across his interrogatories and depositions, and a central fact to this case. Thus, Cowger's evidence cannot be discarded as uncorroborated and self-serving, and Cowger's evidence creates a genuine dispute of material fact.

Additionally, much of the evidence from both parties is self-serving and uncorroborated because many of the events in question occurred between two people

who failed to document their interactions or did so with the purpose of garnering support for their respective positions.[4] Cowger was fired during a time where Signal Peak's new management was dealing with federal investigations into its corrupt practices, so Cowger has every reason to present evidence that portrays himself as the innocent victim of events at a mine characterized by corruption and corner cutting. Signal Peak also has every reason to present evidence that shows the Court and relevant regulatory bodies that it "cleaned house" after years of misreporting. The nature of all this self-serving evidence goes towards credibility, and the jury can decide at trial which party it finds more credible.

Judge Cavan found that there were disputed issues of material fact as to whether Signal Peak's sited reason of misreporting vacation days provided good cause for Cowger's discharge. (Doc. 38 at 19). Signal Peak argues that he failed to consider undisputed facts that show good cause. (Doc. 42 at 18–19). Because there is a disputed basis for Cowger's termination, the Court cannot reach the question of good cause. The Court overrules Signal Peak's objection that the Findings and Recommendation failed to consider undisputed facts that provide good cause for Cowger's discharge.

---

4. For example, Signal Peak relies on the declarations of current employees, (*see, e.g.,* doc. 28-8), and interviews conducted by Floyd, who bore the responsibility for reporting the accident and had every reason to benefit Signal Peak and shift blame away from himself. (*See* doc. 28-21). Cowger relies almost entirely on his own interrogatories and deposition testimony. (Doc. 34-1).

Finally, Signal Peak relies heavily on this Court's decision in *Brown*, another WDEA case arising out of Cowger's accident, in which case the Court found good cause was undisputed and granted Signal Peak's motion for summary judgment. (Doc. 41 (citing *Brown*, 2023 WL 3742358)). In that case, Brown, the longwall planner, explicitly instructed employees not to report Cowger's accident. *Id.* at *2–3. Signal Peak asserted, and Brown did not dispute, that Signal Peak terminated Brown for his failure to report Cowger's accident and injuries. *Id.* at *6. This case is factually and legally distinct: Cowger reported his injuries to his supervisor, and the parties disagree as to why Signal Peak discharged Cowger. Thus, *Brown* is not analogous and does not persuade the Court that the basis for Cowger's discharge is undisputed. The Court adopts Judge Cavan's findings on this issue in full.

### B. *Cowger's Managerial Status*

Judge Cavan reasoned that because questions of fact existed as to the basis for Cowger's termination, he did not need to determine whether Cowger's position was managerial. (Doc. 38 at 16 n.3). Signal Peak objects to Judge Cavan's refusal to address this issue. It seems to argue that if Judge Cavan had decided the manager question and afforded it the discretion required by the WDEA, he would have found Signal Peak had good cause to terminate Cowger. (*Id.* at 15-18). Cowger responds that whether his position was a managerial one is immaterial, as the basis for his discharge is disputed. (Doc. 42 at 16-17).

14

### 1. *The Managerial Role and the Good Cause Analysis*

Signal Peak argues that Judge Cavan erred by failing to determine that Cowger was a managerial employee. (Doc. 41 at 15). Signal Peak argues that Judge Cavan should have found that Cowger held a managerial position and thus afforded Signal Peak the "greatest discretion" in deciding whether it had good cause to terminate Cowger. (*Id.* at 18). Cowger does not directly respond to Signal Peak, instead relying on Judge Cavan's finding that the questions of fact regarding the reasons for Cowger's termination preclude summary judgment regardless of Cowger's status. (Doc. 42 at 16-17).

Whether or not an employee is a manager is an integral part of a good cause analysis. *See Hathaway v. Zoot Enterprises, Inc.*, 498 P.3d 204, 209 (Mont. 2021). Employers are afforded the "greatest discretion" when determining whether to terminate a managerial employee or an employee who occupies a "sensitive" managerial position, though the discretion is not absolute. *Sullivan v. Cont'l Constr. of Mont., LLC*, 299 P.3d 832, 835 (Mont. 2013).

By claiming that Judge Cavan erred in not determining whether Cowger held a managerial position, Signal Peak effectively argues that Judge Cavan should have made a finding as to whether it had good cause to terminate Cowger. As discussed above, because the basis for termination is disputed, summary judgment on the issue of good cause is not appropriate.

The Court overrules this objection.

### 2. *Managerial Status*

In objecting to Judge Cavan's declining to determine whether Cowger was a managerial or supervisory employee, Signal Peak has asked the Court to make that finding. (Doc. 41 at 16–17). Cowger does not directly address whether he was or was not a manager, only that the court need not address the question. (Doc. 42 at 16–17).

The Court is not required to decide whether Cowger held a managerial or supervisory position. However, there is no disputed fact as to Cowger's status, as explained below. The Court will make a determination as to Cowger's status because, unlike the rest of the good cause analysis, Cowger's managerial status does not depend on why Signal Peak terminated him.

When hearing a motion for summary judgment, courts are generally required to view the facts in the light most favorable to the non-moving party, but there must be a genuine dispute as to the facts. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see Hughes v. Rodriguez*, 31

16

F.4th 1211, 1218 (9th Cir. 2022) (expanding the logic of *Scott* to other types of evidence).

In WDEA cases, courts look at several factors to determine if an employee is a supervisor or manager, including "the employee's responsibilities in running the organization's day-to-day operations, the employee's discretion in undertaking those responsibilities, the level of trust placed in the employee, and the nature of the relationship between the employee and her superiors." *Bird v. Cascade County*, 386 P.3d 602, 606 (Mont. 2016).

Signal Peak has presented clear evidence that Cowger was a managerial or supervisory employee. First, Cowger had responsibility in running the organization's day-to-day operations: Cowger's job description includes "plann[ing], schedule[ing], coordinat[ing], control[ling] and *supervis[ing]* the activities of all L[ong]W[all] crew members;" and "approv[ing] and manag[ing] employees' scheduled leave." (Doc. 28-5) (emphasis added). Second, Signal Peak showed its trust in Cowger by assigning him important duties: he oversaw training and development, compliance with state and federal employment laws, and safety and risk management. Third, the nature of the relationship between Cowger and Signal Peak indicates that Cowger was a manager: he reported directly to the Vice President of Underground Operations. Signal Peak presents other evidence to show that Cowger was a supervisory or managerial employee. Cowger was reported to

"handle ... his subordinates" and was considered "one of the better communicators [Signal Peak] had *in management*." (Doc. 41-2) (emphasis added). His promotion to longwall coordinator made him eligible for a management bonus of up to 20% of his salary. (Doc. 41-4). Finally, Cowger admitted to being "on the management side" and described himself as having supervisory responsibility. (Doc. 41 at 17). Cowger has provided no facts or legal argument as to why the Court should not find him a managerial or supervisory employee.

The court sustains Signal Peak's objection and finds that, under the WDEA, Justin Cowger was a managerial or supervisory employee. Therefore, at trial, Signal Peak will be afforded the greatest discretion in its decision to discharge Cowger.

## IV. Conclusion

Accordingly, IT IS SO ORDERED that Judge Cavan's Findings and Recommendations (Doc. 38) are REJECTED as to whether Cowger was a manager and ADOPTED as to all other issues.

IT IS FURTHER ORDERED that Defendant Signal Peak Energy's motion for summary judgment (Doc. 26) is GRANTED as to Cowger's managerial status and DENIED as to all other issues.

DATED this 27th day of September, 2023.

SUSAN P. WATTERS
United States District Judge